[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12603
Non-Argument Calendar
_____

Agency No. A206-227-187


MORSHED ALAM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 16, 2018)

Before WILLIAM PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Morshed Alam petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the immigration judge's ("IJ") order denying his claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  In his petition, Alam principally argues that the BIA erred in affirming the IJ's finding that he could reasonably be expected to relocate to another part of Bangladesh.  Alam also contends that he is eligible for asylum because he suffered past persecution on account of his political activities and has a reasonable fear of future persecution, that the BIA erred in finding that he had not met his burden to establish a claim for withholding of removal, and that he qualifies for relief under the CAT because there is a clear probability he would suffer torture in Bangladesh.

# I

We review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  To the extent the BIA adopts the reasoning of the IJ, we review the IJ's decision as well.  *Id.*  Issues not reached by the BIA in its final order of removal are not properly before us.  *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007); *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1279 (11th Cir. 2013).  In addition, claims that are not briefed on appeal are deemed abandoned, and their

2

merits will not be addressed.  *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013).  We lack jurisdiction to "consider issues that could have been, but were not properly raised in immigration proceedings and appealed to the BIA."  *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 867 (11th Cir. 2018).

We review legal claims, such as whether the BIA applied the wrong legal standard or failed to give reasoned consideration to an issue, *de novo.  Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).  The BIA need not address every piece of evidence presented by the petitioner, and instead, "need only consider the issues raised and announce [its] decision in terms sufficient to enable a reviewing court to perceive that [it has] heard and thought and not merely reacted."  *Cole,* 712 F.3d at 534 (internal quotation marks omitted).

We review factual determinations under the substantial-evidence test, which requires us to "view the record evidence in the light most favorable" to the BIA's decision and to "draw all reasonable inferences in favor of that decision."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*).  To reverse a factual determination, we "must find that the record not only supports reversal, but compels it."  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).  We do not re-weigh the evidence that was before the BIA.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009).  The question of relocation—principally at issue here—is a factual issue.  *Diallo v. U.S. Att'y Gen.*, 596 F.3d

3

1329, 1334 (11th Cir. 2010).  We must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (internal quotation marks omitted).

## II

An alien who arrives in or is present in the United States may apply for asylum.  INA § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The Attorney General or Secretary of the Department of Homeland Security ("DHS") has discretion to grant asylum if the alien meets the INA's definition of "refugee."  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  The INA defines "refugee" as:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The applicant bears the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *Al Najjar*, 257 F.3d at 1284.  To establish eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a factor listed in the statute or (2) a well-founded fear that the factor will cause future persecution.  8 C.F.R. § 208.13(b).

4

"A showing of past persecution creates a presumption of a 'well-founded fear,' subject to rebuttal[.]"  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005).  To overcome the presumption of a well-founded fear of future persecution, the government must demonstrate by a preponderance of the evidence *either* "(1) that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" *or*—importantly here—"(2) [that] the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality and under all the circumstances, it would be reasonable to expect the applicant to do so." *Kazemzadeh*, 577 F.3d at 1351–52 (alterations and quotations marks omitted). With respect to the latter, the BIA must consider the following non-exhaustive factors in determining the reasonableness of relocating:

> whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties.

8 C.F.R. § 1208.13(b)(3); *Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1226 (11th Cir. 2006).

To qualify for withholding of removal, a petitioner must establish that his "life or freedom would be threatened" in his country because of his "race, religion, nationality, membership in a particular social group, or political opinion."  INA

5

§ 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *see also Mendoza*, 327 F.3d at 1287. The petitioner must show that it is more likely than not that he will be persecuted on account of a protected ground if returned to his home country. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013). A failure to establish eligibility for asylum necessitates a failure to meet the higher standard for withholding of removal. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1177 (11th Cir. 2008).

### III

As an initial matter, the BIA found that Alam had abandoned his CAT claim on appeal and Alam does not meaningfully challenge that finding. Accordingly, he has waived review of that determination, the issue was not properly exhausted before the BIA, and we lack jurisdiction to consider it. *See Bing Quan Lin*, 881 F.3d at 867; *Cole*, 712 F.3d at 530. That aspect of Alam's petition is therefore dismissed. In addition, the BIA explicitly chose to rule only on the ground that the government had overcome the presumption of Alam's future persecution due to his ability to safely and reasonably relocate within Bangladesh. Because we do not address issues not reached by the BIA, *Lopez*, 504 F.3d at 1344, we will not

6

address the additional issues discussed by Alam in his brief.[1]  Rather, like the BIA, will confine our review to the relocation issue.

Substantial evidence supports the BIA's determination that the government rebutted Alam's well-founded fear of persecution by showing that he could relocate to the Sylhet region (or division) of Bangladesh to avoid persecution and that it would be reasonable to expect him to do so.  *See Kazemzadeh*, 577 F.3d at 1351–52.

While the 2012 and 2013 Human Rights Reports for Bangladesh mentioned ongoing political violence in the country, they did not mention any political violence in Sylhet specifically.  Similarly, although the Odhikar Report painted a troubling picture of political violence in Bangladesh generally, it also did not identify Sylhet as a particularly problematic area.  The Odhikar Report noted that Awami League continued to rely on overt and violent force and stated that the oppression of opposing political parties had become regular practice, but it also explained that the government had repressed meetings and protests of its political opponents less in Sylhet than all but one other division of Bangladesh.  Finally, while the EVER Report found that one of the districts in Sylhet had a large number

---

[1] Alam mentions in passing that evidence that he submitted with his motion to reopen warranted the reopening of his proceedings.  However, the only motion to reopen filed by Alam that is evident in the record was granted.  There is nothing in the record indicating that Alam filed an additional motion to reopen below and he has no other petition pending with this Court.  In any event, because Alam has only mentioned the issue in passing in his brief, the argument is abandoned and we will not consider it.  *Cole*, 712 F.3d at 530.

7

of violent incidents, it also noted that Sylhet had the fewest total number of instances of violence of any division and the second fewest number of people wounded in any division.  Thus, according to the Report, the division of Sylhet as a whole was significantly safer than other parts of Bangladesh.

Alam's counterarguments are not persuasive, and in any event cannot overcome the deference owed to the BIA's relocation determination.  First, although Alam argues that conditions in all of Bangladesh were deteriorating, the documentary evidence included in the various reports indicates that, at least in terms of political violence, some areas of Bangladesh, including Sylhet, are indeed safer than others.  Second, to the extent that Alam asserts that general violence is so prevalent in Bangladesh that he would not be safe anywhere in the country, he simply has not provided sufficient supporting evidence.  Third, while Alam contends that the police were involved in efforts to attack and suppress members of opposition parties, his assertion does not directly address the BIA's finding that he could avoid future persecution by relocating to Sylhet.  Finally, Alam argues that the criminal charges against him would result in a nationwide search for him by the police force—which, he asserts, in Bangladesh is controlled by the national (rather than local) government.  But he fails to address the BIA's conclusion that he offered no evidence regarding Bangladesh's criminal structure or other documentation to support this assertion.

This Court does cannot re-weigh the evidence that was before the BIA, *Kazemzadeh*, 577 F.3d at 1351, and in any event, there is no evidence in the record that would compel this Court to reverse the BIA's determination that Alam could avoid future persecution by relocating to Sylhet. *Id.* at 1351–52; *Mendoza*, 327 F.3d at 1287.

Substantial evidence also supports the BIA's determination that it would be reasonable to expect Alam to relocate to Sylhet. *See Kazemzadeh*, 577 F.3d at 1351–52. The BIA considered the fact that Alam was young, single, in good health, had no children, and had never held a national political office, as well as the fact that his assailants appeared to be local Awami League members whose influence did not extend beyond their district. Alam also testified that, prior to leaving Bangladesh, he was able to move around the country freely, and the 2013 Human Rights Report stated that, as a general matter, the government permits freedom of movement within the country. Accordingly, construing the evidence in light most favorable to the BIA's determination, *Adefemi*, 386 F.3d at 1026–27, the record supports the BIA's finding that he could reasonably relocate to Sylhet. *Kazemzadeh*, 577 F.3d at 1351–52; 8 C.F.R. § 1208.13(b)(3)(ii). Because Alam

9

has failed to establish eligibility for asylum, he has necessarily also failed to meet the higher standard for withholding of removal. *Djonda*, 514 F.3d at 1177.[2]

Accordingly, we dismiss the petition as to Alam's CAT claim and otherwise deny the petition.

**DISMISSED IN PART, DENIED IN PART.**

---

[2] To the extent that Alam argues that the BIA overlooked or did not address his arguments, the BIA need not address every piece of evidence presented by a petitioner and the BIA's order demonstrates that it considered the issues raised and adequately explained its decision. *Cole*, 712 F.3d at 534.